**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **LOUCREISE MCGEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 4:08CV1092-DJS |
| ) | |
| **NATIONAL HEALTHCARE** ) | |
| **CORPORATION and DELMA** ) | |
| **GERLT,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

Plaintiff Loucreise McGee, a nurse, is a former employee of defendant National Healthcare Corporation ("NHC"), where defendant Delma Gerlt was her supervisor. Count I of plaintiff's complaint asserts a claim of wrongful discharge against defendant NHC, and Count III asserts a claim of tortious interference with plaintiff's employment against defendant Gerlt. Now before the Court is defendants' motion for summary judgment on Counts I and III of plaintiff's complaint.[1]

Movants have complied with the requirements of the Court's local rule by filing a Statement of Uncontroverted Facts supported by citations to the record. E.D.Mo. L.R. 7-4.01(E). Plaintiff has largely failed to specifically controvert movants'

---

[1] By its order and partial judgment of February 24, 2009, the Court dismissed Count II, plaintiff's breach of contract claim against defendant NHC.

statement of facts as provided for in the local rule, as she has not responded with a statement of facts "as to which the party contends a genuine issue exists," with citations to the record and noting the corresponding paragraph number from movants' listing of facts, as is called for by the local rule.  Id.  Instead, plaintiff's memorandum in response merely sets forth her own assertedly Uncontested Facts.  Those facts stated by defendants and supported by their evidence, which the Court cannot readily identify as specifically controverted by plaintiff, are deemed admitted for purposes of summary judgment. The Court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.  Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)); see Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999).  The application of these principles to the record before the Court results in the establishment for summary judgment purposes of the following material facts.

Plaintiff was employed as a licensed practical nurse and charge nurse by NHC at its skilled nursing facility in Town & Country, Missouri from October 2005 to her termination by defendant Gerlt on April 12, 2007.  Prior to her termination, plaintiff received three Supervisory Adverse Action Notices or "SAANs" for

misconduct or poor performance. The first SAAN dated May 4, 2006 was based on the complaint of a resident's family about plaintiff's harsh reaction to their reminder concerning the resident's care. The SAAN states that it is the second family complaint received concerning plaintiff's attitude and the manner in which she speaks to others, and warns that any further incidents will result in termination.

The second SAAN dated August 26, 2006 reports plaintiff's unprofessional behavior with a "CNA" or certified nurse assistant, with whom plaintiff had had multiple incidents. Plaintiff was counseled to speak appropriately to co-workers and not to allow herself to be drawn into unprofessional confrontations. On October 20, 2006, plaintiff received a third SAAN for failing to follow NHC's philosophy for treatment of residents and for creating an atmosphere of hostility rather than teamwork.

In 2007, efforts were made to instruct and correct plaintiff's performance, and to impart teamwork principles, sound supervisory approaches, and conflict resolution and communication skills. Plaintiff's "typical response was characterized by blame shifting, denials and accusations" that she was being wrongly assessed. Gerlt Affidavit [Exh. B to Doc. #43], ¶12. On April 5, in response to plaintiff's conflicts with other staff, she was moved to another floor of the facility. On April 6, plaintiff's next scheduled work day, she came to work late and not wearing defendant NHC's standard uniform. On plaintiff's next scheduled

work day, April 9, plaintiff called in and did not work her assigned shift.  On April 10, plaintiff came in and worked for one hour and left.

On April 11, plaintiff worked her scheduled shift, during which she had a heated exchange with a CNA under her supervision named Lamesha Toran.  In the presence and hearing of a resident and another CNA, plaintiff told Ms. Toran that she "didn't give a fuck what you [CNAs] do."  Defendant Gerlt investigated the incident and her interview of the other persons present confirmed plaintiff's inappropriate comment.

That same day, plaintiff made a call to the NHC ValuesLine, a hotline for complaints concerning patient care at an NHC facility.  The ValuesLine is staffed and administered not by NHC employees, but by employees of a company called Global Services or Global Compliance, of which NHC is a client for telephone hotline services.  Global Compliance's report of the call reflects that the caller, who remained anonymous, reported that defendant Gerlt and others declined to resolve problems involving CNAs' neglect of residents, and that defendant Gerlt discriminates against African-American employees by moving them around and speaking inappropriately to them.

On the morning of April 12, defendant Gerlt called plaintiff to discuss the Lamesha Toran incident.  When plaintiff returned the call and Gerlt asked her about the exchange with Toran the previous day, plaintiff denied that any "incident" had occurred

and began shouting and denying the truth of the accounts Gerlt had obtained in her investigation. During the telephone conversation, Gerlt terminated plaintiff's employment. Gerlt's affidavit attests that plaintiff was terminated based on the three previous SAANs, her attendance issues, her conflicts with other employees and her inability or unwillingness to improve those relationships, plaintiff's denial of inappropriate behavior in the Lamesha Toran incident of the previous day, and plaintiff's threatening demeanor during the phone call.

The Global Compliance report of plaintiff's April 11 call was transmitted via internet to NHC headquarters in Murfreesboro, Tennessee that same day, and was placed in the inbox of Carol Ann Hempfner, NHC's Corporate Compliance Officer, that afternoon or the next day, April 12. The report had been graded a non-urgent priority, and Hempfner called the Town & Country facility on May 17, 2007 to discuss the report (and the report of a second ValuesLine call plaintiff made on April 12, after her termination).

Defendant Gerlt attests in her affidavit that on April 11 and 12, 2007, she did not know that a ValuesLine call about the Town & Country facility had been made by anyone, including plaintiff. To the contrary, plaintiff's complaint avers that "[a]t the onset of [the April 12] conversation, Defendant, Delma Gerlt, inquired about Plaintiff's actions the previous day calling the hotline to alert NHC about patient abuse." Complaint [Doc. #1], ¶16.

Of course, in the summary judgment context, plaintiff cannot rest upon the allegations of her complaint, but must rely upon evidence supporting a dispute of material fact. In her deposition, plaintiff testified as follows concerning her conversation with defendant Gerlt on April 12:

> A: Delma. She left that message. So I called her and she said – she said – she asked me about the value line and I said that I did call the value line. She said that she's got two written statements from two CNAs stating that I said I don't give a damn what they do, they being the CNAs. I says, Well, that can't be true because I write them up all the time. So why would I – what does that mean? She say, Well, I got two written statements and Loucreise I'm just going to let you go.
> Q: And let you go, meaning fire you?
> A: You're fired, yes.

Exh. I to Doc. #48 [pp.106-07]. In opposition to summary judgment, plaintiff argues that her testimony is evidence that defendant Gerlt knew of plaintiff's ValuesLine call prior to terminating plaintiff's employment (whether Gerlt knew of it prior to the telephone call, or because plaintiff told Gerlt of it during their conversation). This interpretation of plaintiff's deposition testimony is at odds with defendant Gerlt's attestation that at that time she had no knowledge of plaintiff's call to the ValuesLine.

Nonetheless, under the applicable principles of Missouri law, this apparent dispute of a material fact does not preclude summary judgment. In this diversity action, plaintiff's claims are pled pursuant to Missouri law. Count I asserts a claim of

retaliatory discharge in violation of §198.070 R.S.Mo. Subsection 1 of §198.070 requires a nursing facility employee such as plaintiff who has reasonable cause to be believe that a resident has been abused or neglected to make a report to the appropriate state department. Subsection 11 of the statute prohibits retaliation against an employee for making such a report. The Missouri Supreme Court has confirmed that §198.070 impliedly creates a private cause of action in tort for an employee who is retaliated against for reporting abuse or neglect. Bachtel v. Miller County Nursing Home District, 110 S.W.3d 799, 803 (Mo. en banc 2003), agreeing with Clark v. Beverly Enters.-Missouri, Inc., 872 S.W.2d 522, 525-26 (Mo.App. 1994).

In Clark, the Court of Appeals treats the right of action under §198.070 as the second of four species of wrongful discharge against public policy previously identified in Boyle v. Vista Eyewear Inc., 700 S.W.2d 859, 875 (Mo.App. 1985). Clark, 872 S.W.2d at 525. Applying that same species of wrongful discharge, although in circumstances not arising from §198.070, the Missouri Court of Appeals has made clear that the narrowness of the exception to the at-will employment doctrine requires that there exist an "exclusive causal connection" between the plaintiff-employee's whistle-blowing activity and his discharge. Lynch v. Blanke Baer & Bowey Krimko, 901 S.W.2d 147, 151-52 (Mo.App. 1995).

Defendants argue that Missouri's cause of action succeeds only where the whistle-blowing is the sole cause for termination,

and that defendants' evidence clearly establishes that plaintiff's prior conduct violations and shortcomings as a supervisor played a role in her termination. The significance and scope of the evidence of plaintiff's previous misconduct and unprofessionalism provides undisputed support for Gerlt's attestation that plaintiff was terminated based on those non-retaliatory concerns. Plaintiff fails to offer any evidentiary basis for a jury finding that the employer's non-retaliatory reasons are pretextual and not causal. Because plaintiff has not successfully disputed myriad performance-based reasons for her termination, her claim of retaliatory discharge in violation of public policy cannot succeed and is subject to summary judgment.

For virtually the same reasons, defendants argue that defendant Gerlt is entitled to summary judgment on Count III. As the Court previously noted in its order on defendants' motion to dismiss, the Missouri standard for tortious interference in such a context requires that all other business justification be eliminated but the allegedly wrongful basis:

> Notwithstanding the broad grant to employers of the power to fire at-will employees for any or no reason, Missouri law affords a discharged at-will employee...a tortious interference claim against his direct supervisor and employer if he presents "evidence eliminating any business justification at all for the termination."

Singleton v. Cecil, 176 F.3d 419, 422 (8th Cir. 1999), *citing* Stanfield v. National Elec. Contractors Ass'n, Inc., 588 SW.2d 199,

202 (Mo.App. 1979); and Eggleston v. Phillips, 838 S.W.2d 80, 83 (Mo.App. 1992).

A very high standard of proof applies to such a claim:

> [W]here a corporate officer is the defendant absence of justification requires that the officer interfere with the contract for personal, as opposed to corporate, interest *plus* that the officer employed improper means. Both, not one or the other, are required...To support a cause of action for intentional interference with a contract or business expectancy by a supervising employee over an at will employee requires evidence eliminating any business justification at all for the termination – a level of proof close to impossible to achieve.

Eggleston, 838 S.W.2d at 83 (emphasis in original), *citing* Green v. The Beagle-Chilcutt Painting Co., Inc., 726 S.W.2d 344, 352 (Mo.App. 1987). Because plaintiff has failed to dispute numerous job performance deficiencies, she does not succeed in adducing evidence that would support a factfinder's determination that no business justification existed for her termination. Defendant Gerlt is therefore entitled to judgment as a matter of law on Count III of plaintiff's complaint.

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. #41] is granted.

Dated this ___15th___ day of October, 2009.

                                                  /s/ Donald J. Stohr
                                                  UNITED STATES DISTRICT JUDGE